**2007 BNH 022**          Note:  **This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**

_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                           Bk. No. 06-10092-JMD
                                                                 Chapter 7

Karl R. Comtois and
April J. Comtois,
           Debtors


Karl R. Comtois, April J. Comtois, and
Lawrence P. Sumski, Trustee,
           Plaintiffs

v.                                                               Adv. No. 06-1067-JMD


MAK Investments, LLC,
           Defendant

*Peter S. Wright, Esq.*
*Franklin Pierce Law Center*
*Civil Practice Clinic*
*Concord, New Hampshire*
*Attorney for Plaintiffs/Debtors*

*Grenville Clark, III, Esq.*
*Gray, Wendell & Clark, PC*
*Manchester, New Hampshire*
*Attorney for Defendant*

## MEMORANDUM OPINION

## I.  INTRODUCTION

Karl and April Comtois (the "Debtors") filed a voluntary petition under chapter 13 of the

Bankruptcy Code[1] on February 8, 2006 (the "Petition Date").  The Debtors and Lawrence

_____

[1]  Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

Sumski, the chapter 13 trustee (collectively, the "Plaintiffs") commenced this adversary proceeding on March 13, 2006, by filing a complaint against MAK Investments, LLC (the "Defendant").  The Plaintiffs amended the complaint on June 30, 2006 (the "Complaint").  On September 27, 2006, the Plaintiffs filed a motion for partial summary judgment on Counts I, II and V of the Complaint (the "SJ Motion").  After a hearing on November 7, 2006, the Court took the SJ Motion under advisement.  On November 10, 2006, the Debtors converted their bankruptcy case to a proceeding under chapter 7 of the Bankruptcy Code.  On February 16, 2007, this Court granted the SJ Motion as to liability of the Defendant under Count I (NH RSA 358-K) and Count II (NH RSA 399-B) and denied the SJ Motion as to the remedies and damages under Counts I and II and as to liability under Count V (NH RSA 398-A).  On May 7, 2007, the Court conducted a trial on liability under Count III (NH RSA 358-A), Count IV (15 U.S.C. § 1640), Count V (NH RSA 398-A), and the issue of damages under Counts I through V.  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

The Debtors acquired their home in Manchester in 2002 (the "Residence").  In 2005, they became delinquent in the payment of their mortgage to Countrywide Home Loans ("Countrywide").  The original principal balance on the mortgage to Countrywide was $217,600.00.  As of early July 2005, the delinquency on the mortgage was $23,923.58 (the

"Reinstatement Amount"), and Countrywide had scheduled a foreclosure sale for July 27, 2005. During the first week of July 2005, the Debtors were approached by Brian Colsia, a member of the Defendant.  Colsia offered to lend the Debtors the Reinstatement Amount under certain terms and conditions.  The Debtors accepted his proposal.

Under the terms of a Loan Agreement and Promissory Note dated August 1, 2005 (the "Agreement"), the Debtors agreed that (1) the Defendant had advanced on their behalf the Reinstatement Amount to Countrywide; (2) the "funds advanced" were to be due and payable twelve months from August 1, 2005; (3) the "total amount due shall be $47,865.16;" and (4) the Debtors would make payments in the amount of the monthly payment on the mortgage to the Defendant on or before the fifth day of each month.  Pursuant to the Agreement, the Debtors executed and delivered to the Defendant a warranty deed (the "Conveyance") for the Residence which was "to be held by [the Defendant] in escrow to ensure compliance with the terms [of the Agreement]."  In the event that the Debtors failed to timely forward mortgage payments to the Defendant, it could record the warranty deed "to protect its interests."  Upon payment in full of all outstanding debt to the Defendant by the Debtors, the unrecorded deed was to be returned to the Debtors.

The Defendant paid the Reinstatement Amount to Countrywide, but the Debtors defaulted on their obligation to make monthly mortgage payments to the Defendant. Consequently, on December 8, 2005, the Defendant recorded the deed to the Residence.  The Defendant subsequently commenced eviction proceedings against the Debtors.  An eviction hearing was scheduled for the Petition Date but was stayed by the filing of the Debtors' bankruptcy petition.  On February 14, 2006, the Defendant sought relief from the automatic stay

in order to proceed with its eviction.  On March 14, 2006, the Debtors filed the complaint commencing this adversary proceeding.  On March 15, 2006, the Court denied the Defendant's motion for relief from the stay and on March 24, 2006, entered an order requiring the Debtors to make certain adequate protection payments to the Defendant (the "AP Order") (Doc. No. 41).  The Debtors subsequently failed to maintain the adequate protection payments required by the AP Order and the Court entered an order granting the Defendant relief from the stay to proceed with the eviction of the Debtors on June 15, 2006 (Doc. No. 54).  The Defendant was not receiving monthly payments from the Debtors and ceased making payments to the holder of the first mortgage.  On September 27, 2006, the mortgagee obtained relief from the stay (Doc. No. 75).  On March 17, 2007, the first mortgagee sold the Residence at foreclosure for the sum of $225,000.00 to a third party.  The Debtors must vacate the Residence by June 1, 2007.

## III.  DISCUSSION

At the beginning of the trial the parties agreed that the foreclosure sale of the Residence by the first mortgagee to a third party effectively rendered the remedy of recision of the recorded deed from the Debtors to the Defendant moot.  Accordingly, the Debtors did not present any evidence on Count IV and are not seeking recision as a remedy under any other count.  In addition, the Debtors conceded that the only remaining remedy available for the summary judgment ruling in their favor on Counts I and II would be damages under NH RSA 358-A.  For those damages to arise the Court would need to find that the conduct which resulted in liability under those counts was also a violation of NH RSA 358-A under Count III.  The Debtors did not present any evidence at trial regarding Count V.  At the close of the trial, the Debtors argued that

4

the violations established under Counts I and II are *per se* violations of NH RSA 358-A under controlling federal law and prior decisions in this district.

### A.  Liability Under NH RSA 358-A

NH RSA 358-A:2 makes it "unlawful for any person to use any . . . unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  Whether a person has committed an unfair or deceptive act is a question of fact for the Court.  Chroniak v. Golden Inv. Corp., 983 F.2d 1140, 1146 (1st Cir. 1993).  "A practice is 'unfair' if (1) it is 'within at least the *penumbra* of some common-law, statutory, or *other established concept of unfairness*," (2) "it is immoral, unethical, oppressive, or unscrupulous," or (3) "it causes substantial injury to consumers."  Id. (citing Rizzuto v. Joy Mfg. Co., 834 F.2d 7, 8 (1st Cir. 1987) (citations omitted)).  "A practice may be 'deceptive' . . . if it 'could reasonably be found to have caused a person to act differently from the way he otherwise would have acted.'"  Id. (citing Kazmaier v. Wooten, 761 F.2d 46, 51 (1st Cir. 1985)).

The undisputed evidence at trial confirmed the Court's ruling on the SJ Motion that the Defendant had violated New Hampshire law: (1) by failing to disclose the interest on its consumer credit transaction with the Debtors at an annual rate of interest and to compute such interest according to the actuarial method as earned on the outstanding unpaid balances for the actual time outstanding as required under NH RSA 358-K:4 (Count I); and (2) failing to disclose the rate of interest or the total cost of interest at the inception of the transaction as required by NH RSA 399-B:2 (Count II).  Brian Colsia, the managing member of the Defendant, testified that it began entering into transactions similar to the one with the Debtors in 2005 and quickly learned that it would be difficult to make any money in such transactions due to the poor

5

financial condition of the consumers for whom it was advancing money.  After no more than ten such transactions during 2005, the Defendant ceased all such activity.  Colsia testified that he fully described the proposed transaction to the Debtors but did not give the required disclosures required by NH RSA 399-B or charge interest in the manner required by NH RSA 358:K because he was unaware of those requirements.

This conduct is squarely within the proscriptive penumbra of the consumer protection statute.  NH RSA 358-A:2; Chroniak, 983 F.2d at 1147; Arsenault v. Realty Funding Corp., 184 B.R. 864, 874 (Bankr. D.N.H. 1995).  Accordingly, the conduct of the Defendant which resulted in summary judgment in favor of the Debtors under Counts I and II is also an unfair act prohibited by NH RSA 358-A:2.  Although no explicit remedy is available to the Debtors under NH RSA 358-K (Count I) or NH RSA 399-B (Count II), the remedies available under NH RSA 358-A are available since the conduct also violates that statute.  NH RSA 358-A:2; Chroniak, 983 F.2d at 1147; Arsenault, 184 B.R. at 874.

The undisputed evidence at trial also shows that the Defendant told the Debtors that the deed was intended as security for the loan and that they understood the execution and delivery of the deed as security.  However, to the extent that a consumer understands the concept of their residence as security for a loan, they are most likely to view the documentation as a mortgage.  The testimony of Karl Comtois confirmed that he understood that he needed to repay twice the amount of the loan necessary to cure the mortgage arrearage within one year and that he needed to make monthly mortgage payments to the Defendant, but that he did not understand either the legal or practical difference between executing and delivering a deed in escrow and granting a mortgage.  Karl Comtois testified that he would not have entered into the transaction with the

6

Defendant if he had understood what he was bargaining away.  The Court finds his testimony indicative of a lack of disclosure or understanding of a key aspect of the nature of the transaction with the Defendant.  Although the Debtors' options in July of 2005 were limited, if they had understood the implications of delivering an executed deed into escrow, they may have made further inquiries and may have learned of the opportunity to cure their mortgage arrearage through a chapter 13 bankruptcy proceeding.

The terms of the escrow into which the executed deed was delivered deprived the Debtors of the procedural and redemption rights afforded to them under New Hampshire mortgage law.  See NH RSA 479:18 (redemption after default); 479:25 (notice of a foreclosure sale and right to a public sale); 479:13 (right to an account of obligations secured).  In addition, the form of the transaction also eliminated any fiduciary duty on the part of the Defendant to obtain a fair and reasonable price for the Debtors' residence if they defaulted in their obligations to it.  Bascom Const., Inc. v. City Bank and Trust, 137 N.H. 472, 475 (1993); Murphy v. Fin. Del. Corp., 126 N.H. 536, 541 (1985).   Based upon the record at trial, the Court finds that the Defendant failed to disclose to the Debtors the legal and practical significance of executing and delivering the deed in escrow as opposed to granting a mortgage.  Under the circumstances of this case, the failure to disclose to the Debtors the essential differences between a mortgage as security and the delivery of a deed as security was an unfair and deceptive act or trade practice. Accordingly, such conduct by the Defendant also violates NH RSA 358-A:2.

**B.  Remedies Under NH RSA 358-A**

NH RSA 358-A:10 provides a private right of action for any person injured by an act or practice which violates the statute.  If the Court finds for a plaintiff in such an action it must

award either the amount of actual damages or $1,000.00, whichever is greater, for each such violation. NH RSA 358-A:10. The Court may also increase the award by two to three times the damages provided by the statute if it finds that the violation was willful or knowing. Id.

At trial, the Debtors attempted to establish damages by introducing evidence of the appraised value of their Residence for tax purposes. However, that evidence did not indicate any date for the assessment and was not supported by any testimony of an expert assessor or appraiser. The Debtors' damage evidence was predicated on a loss of equity through the foreclosure sale. However, they entered into the transaction with the Defendant in July of 2005, the deed was removed from escrow and recorded in December of 2005, and the foreclosure sale occurred in March of 2007. Even if the Debtors' evidence regarding the value of the Residence and the amount obtained at the foreclosure sale was admissible, the measure of damages would be the loss to the Debtors either at the time of the transaction or at the time the deed was recorded. In the absence of any such evidence, the Debtors have failed to establish any actual damages. Accordingly, NH RSA 358-A:10 directs the Court to impose damages in the amount of $1,000.00 for each of Counts I, II and III, for total damages of $3,000.00. The Court finds that the violations were not willful or knowing and, therefore, no enhancement of the damages is warranted.

The statute also requires the Court to award a prevailing plaintiff the costs of the suit and reasonable attorney's fees. NH RSA 358-A:10. The Court shall order the Debtors to file with the Court an itemization of their costs and attorney's fees in prosecuting this matter.

## IV. CONCLUSION

The Court shall enter a separate order (1) finding for the Debtors on Count III, (2) awarding the statutory damages of $1,000.00 each for violations set out in Counts I, II and III, (3) finding for the Defendant on Counts IV and V, and (4) directing the Debtors to file with the Court an itemization of their costs and attorney's fees in prosecuting this matter.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:  May 18, 2007                         /s/ J. Michael Deasy
                                            J. Michael Deasy
                                            Bankruptcy Judge

9